Good afternoon, this is case number 5-25-0030, in the reign of marriage of Shelley Ann Fritch versus Curtis Dwayne Fritch. Mr. Fritch is the appellant in this case. And the appellant is represented by Ms. Straugh, is that correct? Yes Are you both ready to proceed? Yes All right, you may proceed when you're ready. May it please the court, counsel, I'm Paige Straugh and I represent the appellant in this case, Curtis Fritch. The appeal is about the granting of a motion to vacate a marital settlement agreement in this case. The parties divorced in 2018. They were both pro se. The wife was the petitioner. In fact, she drafted all of the documents. She used as a template of sorts the documents of a friend who had provided those to her. She filed for divorce in September of 2018. The judgment and the MSA were not entered until November of 2018 when she appeared in court herself before the judge. The terms of the MSA are what we're here about. The MSA included standard language that you see in most of these documents, but one significant thing was that they each waived a right to any maintenance. There was discussion, and by discussion I mean in the form box, the boxes included in a form that sometimes the court will use when you have pro se petitioners that the judge apparently filled out as speaking with her. It provided that my client would receive the marital home. There was no mention of the value of it. There were no contingencies such as it would be sold or any equity would be provided to the wife. It divided the debt. The significant part of the debt was $20,000 related to the vehicle that Mrs. Fritch was to take. My client took responsibility for that debt. That was by far the largest debt. It was about $20,000. She received that vehicle. He took some credit card debt, most of which was small, like $1,000, $1,200 here and there. She took credit card debt in her name. There wasn't a ton of other detail really to speak of. They also had two children. That was part of the joint parenting agreement dealt with separately. That's really the majority of the terms. There was mention of retirement accounts. Each were to keep their retirement accounts in their name. A year later, wife comes back and seeks to vacate that judgment. She also seeks to establish child support. Despite there being no allegation of substantial change in circumstances or anything of that nature, they did agree and entered a child support order. At the same time, she had filed a motion to vacate the marital settlement agreement based on unconscionability, fraud, and derisive coercion. It seems to me in this case we have two competing deferential or legal concepts for it to apply. Usually, if there's ambiguity, you can apply that against the drafter, which would seem to go against wife in this case. There's also a certain amount of deference that would pay to trial judges' determinations. My memory in this case is that Judge Neubauer approved the MSA, and Judge Ligon was the judge later, after Judge Neubauer retired, who vacated the MSA. Yes, that's exactly right. Is there anything to be made from the one-year passage of time from the time it was approved until the time it was vacated? Well, it wasn't actually vacated until like last year. It took that long for the whole process to go through. The motion to vacate was filed a year and something after the original judgment had been entered. That is within the time period that it is allowed to do so. There wasn't a great explanation as to why it took that long to file it, and that is significant. It is important in a case where you're alleging unconscionability to show that there was not only a meritorious defense that should have been presented, but also that the efforts were made to bring that to the Court's attention as quickly as possible. Didn't you argue in your brief that she benefited from the MSA? Yes. She allowed some parts of it to be enforced and took advantage of some parts of it in analysis?  What do we make of that? Well, that was my first argument, is that she did benefit from it, and the case law is very clear that if you benefit from the terms of a judgment, you don't then get to come back and vacate that judgment because you don't like the other parts. That's not how that works, and the law is clear about that. She did benefit in that she received a car that was fully paid for. She walked away from a bunch of debt. There was nothing confusing about that, that she did receive financial benefit. Not only that, if you consider the child support issue, which originally there was no child support because they were sharing equally, and that's what they agreed to do, when she came back and asked for child support, she essentially ratified these documents by entering into an agreed order to now give her child support. My other question, my first comment on the petition to vacate the judgment, the decision on that, our standard review of Ligon is abuse of discretion. We grant Judge Ligon, the trial judge, quite wide latitude in her decision to vacate this, so how do we get past that standard review? I think the first way to get past it is you look at her order, and you will see that she either misunderstood or misstated some facts that had been presented. That's pretty significant. What facts were those? One in particular was that the wife had no retirement account. It does say in the original MSA that they each keep their own retirement accounts in their name. So she testifies at the hearing that she had a retirement account, but it was closed out. My client also testified that she had a retirement account for when she worked for a bus company for five or six years. There's never any information in there about when she closed this account out. All we know it was last week before they testified. So it is not necessarily a falsehood in the MSA or misleading in any way that she had no retirement accounts. It says in there that she did and that she was entitled to it, and there's not actually any evidence that says she didn't have that at the time that she entered into the MSA. That is one of the misstatements. There are a few others, and let's see. There are a number of other facts that have to do with the conflicting testimony. An important one was how many retirement accounts did he have? Honestly, I'll tell you the truth. I don't think anybody involved in this family's finances has a clue what they had or where they had it. I think that's a big part of the problem. There was argument about there having potentially been a different pension that my client may have had that they referred to as a local pension, but there's no actual evidence about any of that. None. So she's reliant on this massive amounts of money that she refers to as a $200,000 worth of retirement funds that my client has, but we don't actually have any indication of that, no real evidence of that, just allusion to it. In fact, it was argued about by counsels, but no documentation, no numbers, no account references, like who even holds it. None of that. So those things are important. There were a number of other things that were not necessarily massive fact statements, but if our point in what we're looking at here is whether or not the document itself is unconscionable, every fact does matter, every one. There are assumptions that seem to be made here that are really not backed up by the evidence either. We don't actually have a value on the marital home, but there's argument, and she makes the point that she received no equity for the marital home. The only information ever provided about that was that they paid $36,000 for it in 2000, October of 2000, just after they were married. It was paid off, they refinanced it during the marriage, it was paid off again. The only dollar amount ever put on that was by the wife. She said she thought it was worth $40,000. Well, what is so lopsided about my client keeping the debt of $20,000, which would offset half of that $40,000 that she says the house is worth, and then she gets a $20,000 offset? There's nothing lopsided or unconscionable or unreasonable about that. And unconscionability obviously requires much more than a non-equal split. It doesn't have to be an equal split. It takes much more than that to show unconscionability. So if the judge is not looking at the facts as they're actually presented and what was in evidence, as opposed to argument and allusion and jumping to conclusions that were never really supported, she doesn't have the facts on which to base her discretion. And although no suggestion at all that there was any ill intent there, but it has the same effect that her discretion was abused because she relied on facts that aren't supported by the record. So not only does that apply to—the first argument is separate from that, that she is a stop from ever bringing these issues because she's already benefited financially, and that should have been the end of her motion to vacate right there. The second issue is about the unconscionability, fraud, and duress. All of the—all of the wife's testimony is, well, I thought this would happen, or I assumed that would happen, or it doesn't matter what the divorce papers say. Where does that come from? She wrote them. She determined what the terms were. She put them in there. There's explicit statements in there that say this document reflects the agreements. And then later she says, well, you know, I didn't know that, or I didn't think that, or— But if she's unsophisticated in drafting these herself, I mean, it's one thing to draft a document and then say, that document I drafted, it's unconscionable, you should put it out. But if she says, I got my information from him, he was misleading me, doesn't that give credence to her argument that maybe it is unconscionable? He misled me. He told me there was stuff going to happen that didn't happen, or he told me there were accounts that weren't there or things of that nature. Wouldn't that—wouldn't that have more in her favor then? I think you have to overcome the idea that she is the one that presented these. She made a decision whether she is sophisticated or not. He's no more sophisticated than she is. You can tell that by the testimony. She was the one that drove this entire operation. She chose to rely on papers that her friend provided her from her divorce, and she did modify that to reflect what she wanted in there. She didn't just change the title and turn it in. She did change the terms of her friend's agreement and then added in the information that she wanted there. So I don't think that's completely unsophisticated. So we have to consider—we all have a responsibility to do our own diligence about our own lives and our own information. She managed the financials in their home. She got the mail. She did all of the things that would allow her to have access, and she admitted that in her testimony. That she knew about retirement accounts. She knew—she did the taxes. She did them for years, and she did them online. So she used TurboTax, I believe. Did them for years. They were never rejected. She's confident enough to do that, and it also provides her with full information about what the income is, who has what, probably far more than he knew. This isn't a woman who is as stupid as she wanted everyone to believe when she got to the court on this issue. She was perfectly competent to manage all of these things for years, and she did. And then to later say, oh, poor me, I didn't get it. That's not what unconscionability is about, and it is most certainly not what due diligence is about. And that's, I think, where things fell apart. There wasn't a lot of more diligence to do because she knew everything. She had all the same facts everybody else had. So I don't know how much more she would need to do with that. But the end result is that she made an agreement that she dictated the terms of. Later she says, well, he told me he would take care of us. Well, that is not sufficient to undo a written statement that you provided and signed that says this document represents what our agreements are. If that was the case, we'd end up here for every single case. As soon as someone realized they maybe could have done better, they'd run right to the court and file a motion to vacate. We can't have a standard that low. To vacate this as unconscionable is significant. There needs to be more evidence of actual misconduct of some nature. And if you look at the cases where the courts have found an agreement to be unconscionable, it's almost always combined with something else, like straight fraud. There's a case, I believe, in the first district with significant assets, and the husband misrepresented significantly his value. His net worth was something like $20 million, and he had misrepresented it to the wife as a third of that or something of that nature. That's different. That was fraud. That's not what we have here. We don't have any evidence of any of that. All we have is regret and wishes that we hadn't done that, but we can't place any of that or the responsibility for that on my client because there's no evidence he did any of that. She made her own choices. She doesn't like them later. That's not what a motion to vacate is for. That doesn't make unconscionability, and it doesn't support the trial court's finding that there was any sort of reason to find that this was unconscionable and should have been vacated. When her facts that she relied on are not accurate or not supported by the record, that completely eliminates her ability to actually exercise her discretion as it's intended to be. That's where the abuse of discretion comes from. So we ask that you would reverse this and reinstate the original judgment that incorporated the marital settlement agreement. There were two parts of this case I thought, and maybe I'm misunderstanding and giving her a doubt that I may be confusing this case from another case, but I thought your client filed a motion for summary judgment, and she filed a motion to vacate the judgment. What was his motion for summary judgment again? Summary judgment on her motion to vacate. In a row, yeah. It was responsive to her. And that was denied, and then they went forth with the hearing. Just a second. All right, thank you. We'll be given a chance for a rebuttal in a moment. Mr. Carnine, are you ready to proceed? Thank you, Your Honors. Good afternoon. I'm Aaron Carnine, here for Shelly Fritz, the petitioner, appellee, and the wife. A quick background of this case. Shelly, the parties were married in the year 2000. Married in 2000. My client was age 22. When they divorced in 2018, my client was age 40. So she gave 18 years of her life to this marriage. That is an important background. During that time, also, three kids were raised. The first child born in 2004. The second child born in 2006. The third child born in 2009. 18-year marriage, three children. In 2018, when the divorce was entered, the children were age 14, age 12, and age 9. She was still taking care of them. So the important component is to remember the background of this case, her as homemaker and caregiver, which was clearly found by the court. So that's her background. 18 years of her life, raising three kids, and still with three kids when this was fined. I'll quickly reference the estoppel components. I don't see a circumstance whereby her seeking benefits for the children and for child support could prevent her from following through with the rights that she has today. The statute on unconscionability does say, the terms of the agreement except those providing for support, custody, and visitation of the children are binding unless the court finds unconscionability. Unconscionability is clearly the big issue in this circumstance. Two ways to figure that out. The circumstance of the agreement at the time and the resulting economic consequences. Was it unconscionable objectively or based upon the components of the case itself? Now, styles of unconscionability, procedural unconscionability, substances of unconscionability are mainly focusing on the substance, the result that occurred after these agreements were entered. So, consider the circumstances of the marriage. Circumstances of the marriage, homemaker and caregiver, which are significant and should not be forgotten or glossed over with respect to all of our current various arguments. In President Counsel's brief, in the statement of facts, they state, husband routinely was gone 12 hours a day for work. Husband routinely gone 12 hours a day for work. That implies my client Leslie, homemaker and caregiver for 18 years, birthing three children, raising them, and still having children to take care of when the gentleman was injured. So, her circumstances. She worked part-time sometimes. She was a bus driver for a little bit. Worked at an ice cream stand. Worked at a skating rink. Those are the circumstances that were existing at the time. The resulting circumstances, the economic circumstances that were created from the settlement agreement are the following. Wife spent time in government housing, on public aid, with the children. What was her benefit? She got a credit card debt. She got a car and the kids. Her resulting circumstances were government aid, public housing, watching three kids, a car, and credit card debt. His was a paid-off home, 10 acres of land, a 401k, a pension. He worked for the East Central Illinois Pipe Trades. So, a pension exists. It is correct if there's a question of whether a local pension exists or not, which is actually one of the problems in this case. Opposing counsel, the minute ago, was correct, which he did say there's not a lot of detail in that marital settlement agreement. That is accurate. So, husband gone 12 hours a day. Wife, homemaker, kids. The result after the settlement agreement was, oh, and I'm not done. He got pension, potentially local pension. He also received, in a way, no obligation to pay maintenance. He received, in a way, no obligation to pay child support. He received farm income and whatever vehicles he got. So, you're contrasting government housing versus home, 401k, land, pension, secondary pension. Objectively, and subjectively, I might add, that appears unconscionable. That is an unconscionable result. So, I would submit that if we were considering this case based on unconscionability, that's kind of what the statute is for, a circumstance like this one. Now, subcomponents within unconscionability do include duress, coercion, and fraud. None of those can necessarily stand alone. Sometimes they can. But there are elements in each one of them lending itself to unconscionability. My suggestion is that if you simply compare the resulting economic circumstances of both parties, the agreement is unconscionable. Your Honor, to your question, you're correct. She drafted it, but did she? The opposing counsel did clarify that she used a form. And I also submit this concept, if it's a marital settlement agreement, both people are signing their names on that settlement agreement. Both people have a level of responsibility with respect to what is in it. Now, that is contrasted, not contrasted with, but compared to duress, fraud, coercion. What is it? Well, what would be duress in this circumstance? Duress is a wrongful act by the opposing party resulting in financial distress. Financial distress arguably occurred. The taxpayers were paying it because he wouldn't do it. Now, a suggestion was made that she controlled the finances or checks the mail and did the taxes. Well, the value of a home doesn't show up on taxes. The value of a pension does not show up on taxes. In fact, the only thing taxes are going to show is maybe some capital gains or some interest from accounts. That she took the mail and did the taxes did not mean that she was in control of the house, the land, the value of the land, or that she somehow knew these results, which we're standing here today we don't even know. Right now, us and our attorneys do diligence. We have a question mark as to whether a local pension even exists. So what was her due diligence requirement? Fraud concepts. In the court's funding, the court did say non-military property was not considered or allocated. The trial court found that. In opposing counsel's statement of facts, they state husband had a second local pension. He had no idea of its value. And in opposing counsel's statement of facts, they state that there's also no mention of its acres of farmland, which is correct. The fact that undisclosed material assets can trigger unconscionability. So is that a component of fraud or duress? It could be. Those words are subjective. They can relate to each other. Fraud. Was there misrepresentation or concealment? Maybe. Maybe it was pretty passive. Non-military property was not considered. There was testimony and references in the briefs that the parties kind of looked into a qualified domestic relations order. They didn't know what that term was, which kind of makes sense. Both parties sort of looked into it. They kind of looked into a retirement division. Nothing was followed up. Who has a due diligence requirement when both people are putting their names on the settlement agreement? The husband, in this circumstance, would be glad to put his name on this kind of settlement agreement, not do any due diligence, because he received the share of the estate. Coercion concepts. In opposing counsel's brief in the facts section, they state that the parties were separated in February 2018, but she did not move out of the house until June because she had nowhere to go. Nowhere to go. She was not in control of income, finances. She had nowhere to go. Opposing counsel's brief in the statement of facts does say, wife got weak benefits three months after leaving home. Opposing counsel's statement of facts also says, wife's 2018 tax return had her income at $6,500. $6,500 is what she earned in 2018. Husband's income was around $80,000 to $90,000 straight salary, maybe a little addition from farm rent. I'm going to close, Your Honors, with two last things. If unconscionability is not inherently obvious, then was fraud involved, was duress involved, was coercion involved, to wind itself to that kind of argument. My argument is that unconscionability stands on its own, simply by a comparison of the economic results of this case. In the court's order, in the trial court's order, they correctly stated that husband testified during the hearing, during the motion to vacate hearing, husband testified that he thought the agreement was fair because, quote, I worked for that money. That is what the husband said at the trial court, at the trial. Now, my suggestion is, if that was his mindset at the hearing, what was it behind closed doors? Hard to know what was going on behind closed doors, hearsay issues, he said, she said. But if husband is telling the judge that I think this agreement is fair because I worked for that money, I suggest that that is one of his mindsets. And I also suggest that homemaker, caregiver, it's a 24-hour day job, she worked for it, too, and has received nothing at the hearing. The unconscionability statute is for this purpose. It is for this purpose. You correct, Your Honor, when you ask, ambiguity is held against the drafter. It is. Yes, it is. But the unconscionability statute is a saving grace for people in this kind of circumstance that get themselves into this circumstance. A lifetime of time, raising children, and quite literally nothing to show for it. It's like a car, though. So I submit, Your Honor, that there should not be a scenario. Well, the last thing, the unconscionability statute is not part of the Civil Practice Act. It's part of the Illegal Marriage and Dissolution of Marriage Act. It is in that act for these purposes, and it is there for divorce cases and for these vastly economic negative resultant cases. That's where it is, and it is in that section. There should not be a scenario, Your Honors, where a pro se spouse has paperwork, walks into the courthouse, level of confusion based upon testimony, and walks out of the courthouse into poverty. That is what this unconscionability statute is for, to avoid this exact circumstance. That's all I have, Your Honors. Any questions? I have a few questions. It bothers me a little bit that Judge Neubauer in 2018 can find this marital settlement. I forget the language we use. It's a trial judgment. It's not unconscionable. It's a fair reason why it's not unconscionable. And then a year later, a different judge can, in effect, overrule Judge Neubauer's finding. I guess the original MSA and divorce decree dissolution did not provide for child support. Is that correct? That's correct. It also did not provide for maintenance, even though this was a 16 to 18-year marriage. There was no provision for maintenance? That's correct. I don't know the answer to that question. That's a good question. That would be kind of the mind of the judge. I have the same question. The only thing I have is a guess such that if someone shows up with all the paperwork, judges are likely to get cases done and moving. But the answer to that question, Your Honor, the he said, she said, the behind-the-scenes component, she relied on help for the future. The discussions that they may have had, which the window into those discussions is from his quote saying, I earned that money. In all kinds of cases, civil and criminal, if somebody comes in and the doctor said, this is our agreement, and the judge approves it, you usually can't come in later and say, well, I said this was the agreement, but really we have a side agreement that we weren't telling you about. We don't usually enforce that side agreement. We usually say, you put it in writing. That's what you're stuck with. And, Your Honor, that's correct. The best I can say is that that's what the unconscionability statute is for, because it allows the court on its own. If the court doesn't look into it, well, You said earlier, unconscionability usually requires fraud, coercion, or deceit, deception. And when you said, did that happen here? Maybe. I mean, we can't say maybe. Well, unconscionability on its own stands. It doesn't need fraud, duress, or coercion. Those are interpretations that are components of unconscionability. Unconscionability, all it needs is circumstances of the sound agreement and a resulting economic consequence. The circumstances of the agreement could be the fraud and could involve those components. But I submit that purely economically, it is unconscionable. Your Honor, if I remember, this was filed under what? 1301? What provision was it filed under? It would have been 1401. 1401. And there's two years to file under 1301. Two years. And it was filed August 2019. So within one year, about one year. Yeah. Yes. All right. Other questions? All right. Thank you. Thank you. Stronger vote? Yes. I always say I'm going to be brief and then I get the red light. So you expect that, I suppose. I want to go back to the question you asked earlier about some other misstatements, a fact that the judge relied on. She also noted that the wife was unemployed at the time the dissolution was entered. It's not the testimony. She actually was employed. That is, she was employed, I believe, at a nursing home where she worked for a couple of years and then moved on to additional jobs. What is important is, what were the circumstances the day this was entered? Not next year. At the day that it was entered. Evidence about income was a tax return from 2019 that has nothing to do with November 8th of 2018. Circumstances on that day are what matter. I noticed in flipping through this, though, the actual marital settlement agreement that both parties signed was signed in September. September, I think September 18th, maybe, of 2018. So she files the petition. She's been out of the home for a while. She's employed. She has a place to live. Documents are signed. She has them in her hand for months on end before she goes to the courthouse and says, Okay, sign these, please. The document that Judge Neubauer filled out was the judgment form. And the terms of the actual agreement mostly are in the actual marital settlement agreement. There is a notation on the judgment that had marital marked out near real estate. I have no idea what that was about. I don't think any of us do. There's not been any evidence of any non-marital real estate anywhere in this. But that wasn't a document that the parties signed. That was one that was filled out by Neubauer when they were there. And I'm going to assume, having done hundreds of these, that the judge probably asked her questions while she was standing there. Otherwise, how could he have filled that out? My client wasn't even there. I'm a little bothered by the question you just asked, Mr. Carnine. You've got three kids and have married more than 15 years, and there's no provision for child support or maintenance in an agreement like this. And granted, she may have had a job, but it seems her earning power was unequal. It seems odd, if not unconscionable, that maintenance is not provided for in a marriage of that length with three kids. Well, obviously we all know that those two things are separate. Why they decided to do no child support at that point, I honestly do not know the answer to that question. Sometime, at least at the end, weren't all three kids living with husband or dad? Yeah. Do you know what the situation was in 2018 when the solution was first entered? They were very clear about nothing when it came to that. A lot of wishy-washy language about it's intended that they will share time equally. It's very strange. There wasn't a real schedule included in there, but the intent was that they would share time equally. And they were all living in this general area at that point. I don't know what that was about. But when we get back to the maintenance issue, we can talk now about what her needs are now. We can talk about public aid and LINC and SNAP or whatever she got after that and public housing later on. Doesn't matter. What matters is November 18th. And we have no information about other financial obligations or needs at all. So when could any court have made a decision about whether maintenance was appropriate, and if so, how much? We don't know anything about maybe she lived with someone. I don't know. But neither did the trial court who vacated the judgment based on these beliefs that are just not in there. We don't have the information about what exactly was being earned when this was entered. It doesn't matter what the resulting circumstances are. The circumstances that matter are how did we get to entering this judgment and what are the financial results on that day. We don't have information like that. We have assumptions. We have jumping to conclusions or maybe this is what happened. But there's not a document one that shows those things. There's not even a specific testimony about what the situation was that day. Without that, what are we relying on? When the judge finds that she was unemployed when it was entered and that's not true, when they find that she had no, she didn't have any retirement account, we don't know if that is true because nobody pinpointed when it came to stop being. Even wife didn't specify when she cashed it in. She did work during the marriage. She didn't raise kids for 18 years. They were married for more than four years when the first child was born, but she did work. She worked off and on. The fact that she didn't make much money in 2018 makes sense because she was living with him and packing her bags the whole time. When she left, she got a job. She got a place to live. She lived with her parents. And then she moved on. But the fact that she did something different a week later, a month later, a year later, doesn't matter. It matters what was happening that day. That's what we're supposed to look at. That doesn't seem to be what happened here. And if you review the findings in the court, the judge's order, you will see that it doesn't jive with the actual evidence. I also wanted to point out that the judge didn't find any fraud or duress. I addressed that in my brief. But she didn't base her decision on that at all. So that's all I have. Thank you. Thank you. Thanks. We appreciate your arguments and the arguments set forth in your briefs. We will take the matter under advisement and issue a decision in due course. Thank you. Thank you.